# United States District Court
IN THE DISTRICT OF COLUMBIA

STEPHEN J. GUIDETTI

      Plaintiff,

v.

United States

      Defendant.

No: 1:06-cv-00476 (JR)

RESPONSE TO MOTION TO DISMISS

MOTION TO BIFURCATE

Plaintiff hereby responds:

Defendant has moved to dismiss the above-captioned action for insufficiency of service, and for lack of subject matter jurisdiction. Defendant's motion fails on each ground, as follows:

SERVICE WAS SUFFICIENT

Counsel confuses Fed.R.Civ.P. 4(c) with the Rule under which service was effected: Fed.R.Civ.P. 4(i), "SERVING THE UNITED STATES, ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES."

Notwithstanding the language of Fed.R.Civ.P. 4(c)(2), Fed.R.Civ.P. 4(i) states:

(1)    Service upon the United States shall be effected (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General...

While counsel appears to be arguing that service under Fed.R.Civ.P. 4(i)(1)(A) should require that someone other than the Plaintiff effect service, counsel overlooks the alternative method, signified by, "or" and continuing "by sending a copy of the

RECEIVED
JUN 09 2006
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

summons and of the complaint by registered or certified mail...".

Counsel then proceeds, in her "Memo", to cite *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 as support for her misreading. This is a clear misrepresentation of that case. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* involved a district court's decision over matters governed by Fed.R.Civ.P. 37, as shown in the syllabus:

> "Federal Rule of Civil Procedure 37(b)(2)(A) provides that a district court, as a sanction for failure to comply with discovery orders, may enter [a]n order that the matters regarding which the [discovery] order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order."

The case at bar is not yet in the discovery phase, and counsel clearly desires to keep the case from reaching discovery, by whatever means necessary.

Dismissal on grounds of insufficiency of service should be denied.


EXHAUSTION REQUIREMENT HELD TO BE NONJURISDICTIONAL

In <u>Masterson v. United States of America</u>, D.D.C. 05-1807 (JDB); and <u>Turner v. United States</u>, D.D.C. 05-1716 (JDB), (upon which Masterson relied), the Court cited "recent Supreme Court jurisprudence" <u>Arbaugh v. Y & H Corp.</u>, 126 S.Ct. 1235, (2006), quoting, in <u>Turner</u>:

> To guide courts in that inquiry, Arbaugh adopted a clear-statement rule:
>
>> [W]e think it the sounder course to ... leave the ball in Congress' court. If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

<u>Turner</u> held the exhaustion requirement nonjurisdictional. If, as defendant

asserts, "Plaintiff's case is one of over 70 known cases filed in this Court with identical or nearly identical complaints," MEMORANDUM IN SUPPORT, p 2, n 1, then defendant's motion fails on grounds of lack of subject matter jurisdiction; the basis for the assertion, e.g., the exhaustion requirement, is nonjurisdictional.

RECOGNIZED EXCEPTION TO EXHAUSTION REQUIREMENT SHOULD BE HELD APPLICABLE

Masterson and Turner (upon which Masterson relied), both cited, in addition to Arbaugh, *supra*, McCarthy v. Madigan, 503 U.S. 140 (regarding exception(s) to an exhaustion requirement), and Avocados Plus, Inc. v. Veneman, 370 F.3d 1243, 1247-48 (D.C. Cir. 2004) (regarding a court's supposed inability to excuse a mandated exhaustion requirement).

Recognizing that McCarthy and Avocados Plus are, in essence, the two legs upon which Plaintiff's case will stand, Plaintiff will discuss McCarthy's "agency bias" issue, apparently hinging upon the question of whether the Court may, in the McCarthy Court's words, "decline the exercise of jurisdiction which is given" in greater detail below.

Plaintiff proceeds to discuss, in the interim, the Turner/Masterson Courts' interpretation of Avocados Plus' apparent prohibition which, with all due respect, appears to be in error, as illustrated in recent D.C. Circuit jurisprudence.

In Spinelli v. Goss, ___ F. 3d. _____, D.C. Circuit No. 05-5270 (DC No. 00cv00408), (May 5, 2006), the D.C. Circuit Court of Appeals also cited McCarthy (indirectly), and Avocados Plus, clarifying those cases. First, the D.C. Circuit stated:

> [A] court may "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

Rather than asking the Court to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," I am asking the Court to take judicial notice of Spinelli's immediately following sentence:

> Such "jurisdictional exhaustion," as we have called it, may not be excused. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (internal quotation marks omitted).

The D.C. Circuit's interpretation of its own ruling in Avocados Plus is that the Court is unable to excuse "jurisdictional exhaustion." However,

Based upon Masterson, and Turner (upon which Masterson relied), there is no issue of "Such 'jurisdictional exhaustion,'" to be "excused" in the instant case.

In Masterson, the Court was clear:

> At the outset, it is important to note that, in accordance with recent Supreme Court jurisprudence, the issue presented does not technically concern subject matter jurisdiction...

In Turner (based on Arbaugh, and forming the basis for Masterson), the Court found that the issue of exhaustion of the administrative remedy is nonjurisdictional. Turner, slip op., 7, having previously stated, Turner, slip op., 6, citing Arbaugh, at 1244. that:

> "[W]hen a threshold fact is contested, the identity of the factfinder may vary depending on whether the fact at issue relates to jurisdiction or to the merits of the claim; if the fact is jurisdictional, the trial judge may be authorized to resolve the factual dispute, but disputes regarding predicate facts for the claim generally are tried to a jury."

The Arbaugh Court was more explicit:

> "If satisfaction of an essential element of a claim is at issue, however, the jury is

the proper trier of contested facts. Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133 ."

In finding fact(s) upon which to decide the McCarthy "agency bias" exception issue of law, the Court will note that the McCarthy Court stated:

> This Court's precedents have recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion. 503 U.S. 146

> [A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it. *Gibson v. Berryhill,* 411 U.S. at 575, n. 14; *Houghton v. Shafer,* 392 U.S. 639, 640; *Association of National Advertisers, Inc. v. FTC,* 201 U.S. App.D.C. 165, 170-171, 627 F.2d 1151, 1156-1157, cert. denied, 447 U.S. 921 (1980). *See also Patsy v. Florida International University,* 634 F.2d 900, 912-913 (CA5 1981) (en banc), rev'd on other grounds, *Patsy v. Board of Regents of Florida,* 457 U.S. 496 (1982). 503 U.S. 148, 149

## MOTION TO BIFURCATE

Plaintiff therefore moves the Court to "bifurcate"[1] the instant case; to investigate the applicability of a bias exception to the nonjurisdictional exhaustion requirement.

Plaintiff asserts that the facts related in Plaintiff's Complaint, verified by affidavit, establish a factual basis that IRS - an agency not party to the instant action - is biased.

As and for further showing such bias, the Court is requested to take judicial notice of Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9. The Service Policy states:

"(1)   Returning money wrongfully collected: This Policy Statement has been revoked."

---

[1] As Plaintiff understands this term, the Court would first look into the threshold issues of exhaustion/exception, and, based upon the findings therein, determine whether to move on to the next phase; liability.

There can be no clearer articulation of the Defendant's agency's general bias: IRS Policy is to refrain from returning amounts unlawfully collected.

Agency bias is further shown by the fact that the defendant's agency ignores many of its other Policies as a matter of course, to wit:

Defendant's agency routinely disregards Service Policy P-5-2(3), which purports a "commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998", yet no IRS publication, publicly available, notifies Citizens of the right to pursue damages under section 7433, let alone any reference to administrative procedures.

Defendant's agency routinely disregards Service Policy P-1-1, Mission of the Service (IRM 1.2.1.2.11):

> (1) Mission of the Service: Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

Defendant's agency has demonstrated bias against me by ignoring my repeated efforts to gain an understanding of possible responsibilities through examination of IRS records identifying me; failing to comply with Service Policy P-1-1.

Defendant's agency routinely disregards Service Policy P-5-2 (IRM 1.2.1.5.2):

> (1) COLLECTING PRINCIPLES: All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.
> (2) SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service. We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customes. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.

(3) TAXPAYER RIGHTS-We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment. This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.

(4) COMPLIANCE-The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed. The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(5) CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed. All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

Defendant's agency has demonstrated bias against me by failing to be guided, in collecting, by the principles listed in Service Policy P-5-2; by failing to assist me in my attempts to comply with the law; by failing to observe my rights, including my rights to privacy and to fair and courteous treatment; by failing to work with me to meet any filing and paying requirements; by failing to determine when and whether it was appropriate to take actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), based on the facts of my case; by failing to comply with Service Policy P-5-2.

Defendant's agency routinely disregards Service Policy P-5-16 (IRM 1.2.1.5.3):

(1) Forbearance when reasonable doubt exists that assessment is correct: Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayer's claim is within control of the Service, and (2) the interests of the Government will not be jeopardized.

Defendant's agency has demonstrated bias against me by failing to exercise reasonable forbearance, ignoring my repeated efforts to verify any claim of obligation through examination of IRS assessment records; failing to comply with Service Policy P-5-16.

Defendant's agency routinely disregards Service Policy P-5-34:

(1) Collection enforced through seizure and sale of the assets occurs only after thorough consideration of all factors and of alternative collection methods: The facts of a case and alternative collection methods must be thoroughly considered before determining seizure of personal or business assets is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve past due taxes while staying current with all future taxes will be considered. Opposing considerations must be carefully weighed, and the official responsible for making the decision to seize must be satisfied that other efforts have been made to collect the delinquent taxes without seizing. Alternatives to seizure and sale action may include an installment agreement, offer in compromise, notice of levy, or lien foreclosure. Seizure action is usually the last option in the collection process.
(2) All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.

Defendant's agency has demonstrated bias against me by failing to thoroughly consider the facts of my case(s); by failing to obtain approval of the Chief, Collection Division for any seizures and by failing to obtain approval for other specific seizures from District Director, Assistant District Director, or Counsel approval, or court order; by engaging in enforced collection efforts in the absence of record evidence to support such actions; failing to comply with Service Policy P-5-34.

Defendant's agency routinely disregards Service Policy P-5-47 (IRM 1.2.1.5.13):

  (1) Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: \*\*\* All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.
  (2) \*\*\*\*\*.
  (3) Other notice of lien filing requirements: A notice of lien must be filed:
   1. prior to instituting levy action on property in possession of the taxpayer; and
   2. prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.

Defendant's agency has demonstrated bias against me by failing to carefully consider all pertinent facts; by failing to file a Notice of Lien prior to instituting a levy action; by failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-6-20 (IRM 1.2.1.6.7):

  (1) Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.
  (2) Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.

Defendant's agency has demonstrated bias against me by failing to provide me with information on the application of the tax law, refusing my requests for comprehensive, accurate, and timely information on the requirements of tax law and regulations; by failing to make positive efforts to determine my needs and to effectively meet those needs; failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-6-21 (IRM 1.2.1.6.8):

  (1) Educational programs provided: The Service will conduct taxpayer education programs for taxpayers whose needs for tax information are most effectively met by these means.
  (2) These educational programs will include those established to assist individuals in meeting their current and future tax obligations, as well as

programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law or on specific tax provisions of common interest.

Defendant's agency has demonstrated bias against me by failing to conduct education programs; by failing to instruct me on rights and responsibilities under the tax law or on specific tax provisions; by failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-10-42 (IRM 1.2.1.10.4):

> (1)   All bona fide complaints or allegations will be investigated: An investigation will be made of all bona fide complaints or allegations of misconduct or irregularities concerning Service officials or employees and in certain instances investigations may be made of non-Service personnel when their actions may affect the integrity of the Service.

Defendant's agency has demonstrated bias against me by refusing to investigate my complaints or allegations of misconduct or irregularities; by failing to comply with Service Policy.

The Court will note that McCarthy found that:

> Even where the administrative decisionmaking schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim. Bowen v. City of New York, 476 U.S. at 483; Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773 (1947)

McCarthy, at 147

As part of the "bias phase" the Court should determine whether I "may suffer irreparable harm if unable to secure immediate judicial consideration" of my claim.

Defendant's agency has demonstrated general bias by failing to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR

3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

Defendant's agency has demonstrated general bias by failing to amend the regulation to reflect Congress' intent in TBOR II, at all.

Defendant's agency has demonstrated general bias by failing to promulgate the current regulation for more than four years and nine months after Congress' re-amendment in TBOR III. As amended by T.D. 9050, 68 FR 14320, the current 301.7433-1 was not promulgated until March 25, 2003.

Defendant's agency has demonstrated bias by attempting to impose a jurisdictional prerequisite omitted by Congress.

Defendant's agency's bias is best illustrated in March v. Internal Revenue Service -- 335 F.3d 1186 (2003):

> "[T]he IRS concedes that "when the Debtors argue that the 23C Forms were never produced, it is because they probably do not physically exist." Aple. Br. at 15 n.2. In other words, the IRS gets the benefit of a presumption that they admit is likely false."

As part of the "bias phase" the Court should consider this factual admission against interest in determining whether my "interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further"; McCarthy, p. 146, citing West v. Bergland, 611 F.2d 710, 715 (CA8 1979), cert. denied, 449 U.S. 821 (1980). The Court should consider this factual admission against interest in determining whether defendant's reliance upon "the benefit of a presumption that [IRS] admit is likely false" should override those interests.

***