1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4   UNITED STATES OF AMERICA,    )
                                 )
5                                )
                                 )
6                 Plaintiff,     )
                                 )
7   vs.                          )        CASE NO. 06-CR-62-TCK
                                 )
8                                )
    RICHARD MAYNOR BLACKSTOCK,   )
9                                )
                                 )
10                Defendant.     )

11

12

13
                   TRANSCRIPT OF PROCEEDINGS
14                      JUNE 19, 2006
         BEFORE THE HONORABLE TERENCE KERN, DISTRICT JUDGE
15                   JURY TRIAL - VOLUME I

16

17
    APPEARANCES:
18

19
    For the Plaintiff:              MS. LORETTA RADFORD
20                                  MR. KENNETH SNOKE
                                    U.S. Attorney's Office
21                                  110 W. 7th St., Ste 300
                                    Tulsa, Oklahoma 74119
22
    For the Defendant:             MR. OSCAR STILLEY
23                                 Attorney at Law
                                   2120 North B Street
24                                 Ft. Smith, Arkansas 72901

25

```
 1                              INDEX

 2

 3   WITNESSES ON BEHALF OF THE PLAINTIFF              PAGE

 4

 5

 6   ROBERT DEAN

 7         Direct Examination by Mr. Snoke              3

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          PROCEEDINGS

2                       * * * * * * *

3    June 19, 2006:

4         (Voir dire and opening statements were had but not

5    designated as part of this record.)

6              THE COURT:  Government may call its first witness.

7              MR. SNOKE:  Government would first call Bob Dean.

8         Your Honor, I have copies here in books.  Do you want me

9    to put these in front of him?

10             THE COURT:  You may.

11        (Witness sworn.)

12                          BOB DEAN,

13   Called as a witness on behalf of the plaintiff, being first

14   duly sworn, testified as follows:

15                     DIRECT EXAMINATION

16   BY MR. SNOKE:

17   Q.   Would you state your name and spell your last name for the

18   court reporter please, sir.

19   A.   Bob Dean, D-E-A-N.

20   Q.   What's your business or occupation, Mr. Dean?

21   A.   I'm custodian of records for the Internal Revenue Service.

22   Q.   And what do you do in that capacity?

23   A.   I assist with preparing documents for trial, research, and

24   testifying to those documents in trial and about processes at

25   the processing center.

1  Q.    And where is the processing center?

2  A.    I work in Austin, Texas.

3  Q.    Does Austin, Texas have a system whereby you can retrieve

4  documents with their file no matter where they're filed?

5  A.    Yes, that's correct.

6  Q.    That would include documents that would have been filed

7  both in the Northern District of Oklahoma throughout Oklahoma

8  and maybe even in states such as Georgia or Texas?

9  A.    Yes.  Our system, I get access to any records that are

10 filed anywhere in the United States.

11 Q.    How long have you worked for the IRS, sir?

12 A.    Twenty-one years.

13 Q.    And have you worked in any other capacities there with the

14 IRS in that 21 years?

15 A.    Yes.  I've worked in processing.  I've worked in business

16 center reporter programs and a manager of different groups.

17 Q.    Before you there, I have placed several notebooks.  If

18 you'll start on your left there, I believe with the first

19 notebook that contains a number of exhibits beginning with

20 Exhibit No. 1.  Can you take a look at that, please.  And if

21 you will tell me -- first of all, can you tell us generally

22 what that is?

23 A.    This is a Form 1040X that was submitted for tax year 1998

24 for Michael Polay and Wendy Weisberg.

25 Q.    Is this a true and correct copy of that tax form that was

1  received by the IRS?

2  A.    Yes, it is.

3  Q.    And it came from the files and records that you have just

4  discussed there in your records center in Austin, Texas?

5  A.    Yes.  They came from IRS records.

6  Q.    Does it contain all the attachments that came with that?

7  Looks like even the last page there is an envelope with --

8  A.    Yes.

9  Q.    -- sort of a postage mark.

10 A.    Right.  It has copies of everything.

11 Q.    All right.

12        MR. SNOKE:  We would move into evidence Government's

13 Exhibit 1 at this time.

14        MR. STILLEY:  No objection.

15        THE COURT:  Be admitted.

16 Q.    (By Mr. Snoke)  What does it show on Government's Exhibit

17 1 as the date of -- the first date of receipt on that exhibit?

18 A.    The first date of receipt was September 24 of 2002.

19 Q.    Going back -- that's a 1040X form?

20 A.    That's correct.

21 Q.    If you'll go to page 3 of that -- actually, it's the first

22 page of Schedule A., appears to be line 27.  We're now on --

23 I'm showing on the screen -- do you have your screen on in

24 front of you?

25 A.    Yes, I do.

1  Q.   On line 27 there, can you read line 27 there for us.   Read

2  the question and the answer and the amount shown.

3  A.    Line 27 is for other miscellaneous deductions, and it

4  shows, "A deduction and claim of right founded on U.S.C. 26,

5  1341, compensation for personal labor," and it shows an amount

6  of $108,755.

7  Q.   All right.   Now, turning back to the first page of Exhibit

8  1, sir, if you will tell me, is there a preparer's signature on

9  that first page there?

10  A.    No, there's not.

11  Q.   Let's go to Exhibit 1-A.   Tell the Court and the jurors

12  what Exhibit 1-A is.

13  A.    1-A is a certified transcript of an account for Michael

14  Polay for tax year 1998.

15  Q.   That's the same year we just identified Exhibit 1 as being

16  filed for that year, 1998 tax year?

17  A.    Yes, that's correct.

18  Q.   Okay.   And is that a record maintained there in the Austin

19  service center as a true and correct record of what you've got?

20  A.    Yes.   This is information from the computer system, like a

21  transcript of an account, similar to a statement you would get

22  from your bank or your credit card company.

23           MR. SNOKE:   We move into evidence at this time

24  Exhibit 1-A.

25           MR. STILLEY:   No objection.

1    THE COURT:  Be admitted.

2    Q.   (By Mr. Snoke)   If you would next look at Exhibit 2.  Tell

3    us with respect to Exhibit 2 what that is, sir.

4    A.   This is a 1040X.  It's an amended individual income tax

5    return for Michael Polay and Wendy Weisberg for tax year 1999.

6    Q.   This is the next year then?

7    A.   That's correct.

8    Q.   Again, it's a 1040X.  Would you tell the jurors what a

9    1040X form is.

10    A.   A 1040X is used --

11    Q.   Wait.  Let me get this in evidence first.  And it's a true

12    and correct copy, right?

13    A.   That's correct.

14         MR. SNOKE:  We move in evidence Exhibit 2.

15         MR. STILLEY:  No objection.

16         THE COURT:  Be admitted.

17    Q.   (By Mr. Snoke)   Now you can tell the jurors.  What is a

18    1040X?

19    A.   1040X is what a taxpayer would use to change the

20    information that was originally filed on a Form 1040 if there

21    is some information that came in later, such as other income or

22    other deductions that they might report that would change the

23    amount of tax owed or not owed.

24    Q.   All right.  Can you tell us before we leave the first page

25    of that exhibit, did anybody sign as a preparer down there,

1  Mr. Blackstock or anybody else, as a preparer on this document?

2  A.    No.  There's no paid preparer signature.

3  Q.    Then going back to the first page of the Schedule A there

4  again in line 27, would you tell us, does that have -- again,

5  read the question and the answer and the amount claimed for the

6  deduction on that form.

7  A.    Okay.  That's for other miscellaneous deductions, and it

8  states, "A deduction and claim of right founded under Title 26,

9  1341, compensation for personal labor," and it was for $95,135.

10  Q.    So, in essence, in this tax return with that notation

11  there on line 27 of the Schedule A, what are the taxpayers

12  asking to -- what are the taxpayers asking for there, if you

13  can tell?

14  A.    What they're doing is they're reporting income on line 1

15  of the 1040X and then they're removing it as itemized

16  deductions, so then, in effect, their taxable income would be

17  zero.

18  Q.    Now would you look at Exhibit 2-A for me, please.  Tell me

19  what that is.

20  A.    2-A is the certified transcript of the account for Michael

21  Polay for the tax year 1999.

22  Q.    That's the same year in which we just got that report in

23  Exhibit 2?

24  A.    That's correct.

25          MR. SNOKE:  We move into evidence Exhibit 2-A at this

1   time.

2            MR. STILLEY:  No objection.

3            THE COURT:  Be admitted.

4   Q.   (By Mr. Snoke)  Next, if you would look at -- I didn't ask

5   you the filing date on that one.  Let's go back to Exhibit 2

6   and tell me what the filing date is on Exhibit 2.

7   A.   This shows a received date of December 11, 2002.

8   Q.   But it's for the '99 tax year; is that correct?

9   A.   Correct.

10  Q.   Is there some provision in the Internal Revenue Code

11  regarding the number of years you can go back and file amended

12  returns for --

13  A.   Generally --

14  Q.   -- if you know?

15  A.   Generally it's up to three years after a return was filed,

16  but it depends upon other information on there, but that's the

17  general rule.

18  Q.   So we've identified a filing in September '02 in Exhibit 1

19  for the '98 year and in December of '02 for the 99 tax years so

20  far, right --

21  A.   That's correct.

22  Q.   -- for Mr. Polay.  Let's go to Exhibit 3, please.  Tell

23  the Court and the jury what that is, sir.

24  A.   This is a Form 1040X amended income tax return for tax

25  year 2000 for Michael Polay and Wendy Weisberg.

1          MR. SNOKE:  May I have a minute, Your Honor?

2          THE COURT:  You may.

3   Q.   (By Mr. Snoke)  This is a true copy of the records that

4   you have down there, true and accurate copy of it?

5   A.   That's correct.

6   Q.   As filed?

7   A.   Yes, it is.

8   Q.   Then the filing date on Exhibit 3?

9   A.   It shows December 11, 2002.

10  Q.   And again, is this one signed in any way by any tax

11  preparer?

12  A.   No, it's not.

13  Q.   Again, going to the first page of Schedule A of that

14  exhibit.  Wait a minute.

15         MR. SNOKE:  Let's move that into evidence -- Exhibit

16  3 into evidence at this time.

17         MR. STILLEY:  No objection.

18         THE COURT:  Be admitted.

19  Q.   (By Mr. Snoke)  And before we go on to 3-A, let's go back

20  for a moment to 1-A and look at that for a moment.  And tell me

21  if it -- Exhibit 1-A you testified, I believe, was the

22  transcript of the 1040X or at least for Mr. Polay for the

23  '98 -- 1998 tax year; is that correct?

24  A.   Yes.

25  Q.   And we've had a -- this 1040X Exhibit 1 filed on 9/14/02,

1    does that show on the transcript there?

2    A.    Yes.    It's the third entry down where it shows "amended

3    return filed."

4    Q.    And does it show that that claim was disallowed?

5    A.    Yes.    About three months later, a letter was sent to

6    Mr. Polay saying that the 1040X was not allowed.

7    Q.    That date on there is 12/30/02?

8    A.    That's correct, yes.

9    Q.    Let's do the same thing with respect to the '99 tax year

10   in Exhibit 2-A, please, Exhibit 2-A.    You testified that

11   Exhibit 2, the 1040X for '99 -- 1999 for Mr. Polay was filed

12   December 11 of '02 as shown on the tax -- on the filing stamp.

13   And does that show that that was -- 12/11/02, I'm sorry.    Does

14   that show on the -- you may have a hole in your copy, but if

15   you look on the screen there --

16   A.    Right.    There was the amended return filed on 12/11/02.

17   Q.    All right.    Let's see, above it for some reason, I

18   guess we have a --

19   A.    There was a previous one that had been filed in September

20   of '02, and that was disallowed.

21   Q.    All right.    Then we have -- all right.    Let's go to

22   Exhibit 3-A then.    We just did 3.    And tell me what Exhibit 3-A

23   is.

24   A.    This is the certified transcript for Michael Polay for tax

25   year 2000.

1  Q.    And that, again, came from the records down in Austin

2  there, the IRS?

3  A.    Yes, it did.

4  Q.    And for the year 2000, have we established when that -- we

5  did establish when that was filed.  So let's move on to --

6          MR. SNOKE:  Let's move that into evidence, Exhibit

7  3-A.

8          MR. STILLEY:  No objection.

9          THE COURT:  Be admitted.

10 Q.    (By Mr. Snoke)  All right then.  Exhibit 4 -- before we

11 leave 3-A, can we tell whether -- can we tell whether that

12 claim in Exhibit 3 was paid or whether it was disallowed?

13 A.    Well, there was one that came in prior 9/24, just like in

14 the other one, and that was disallowed in February of '03.  And

15 then the one came in in the meantime in December of '02, but

16 that -- there was ultimately an assessment by examination of

17 tax.

18 Q.    All right.  Let's go to Exhibit 4.  Tell us the same thing

19 with respect to Exhibit 4, will you, please, sir.  What is it?

20 This is a 1040 form, isn't it?

21 A.    This is a Form 1040 for 2001 tax year for Michael Polay.

22 Q.    All right.  What would be the circumstances of filing a

23 1040 or -- versus a 1040X?

24 A.    Generally, a 1040 needs to be filed before the 1040X,

25 because you have to have the original return before you change

1   anything.

2   Q.   Can a 1040X be filed if the IRS has done a substitute for

3   return for the taxpayer?

4   A.   Yes, because there is information sent to the taxpayer

5   saying these are what the IRS proposes to be your income and

6   tax due, and then the taxpayer can come back and say, well, no,

7   these are the changes that I want to make to your proposal.

8   Q.   So the IRS will accept a 1040X on a taxpayer who didn't

9   file a 1040 but for whom they have done a substitute return?

10  A.   Yes, that's correct.

11  Q.   Again, this is from Mr. Polay for the year 2001?

12  A.   Yes, that's true.

13          MR. SNOKE:  We would move into evidence Government's

14  Exhibit 4 at this time.

15          MR. STILLEY:  No objection.

16          THE COURT:  Be admitted.

17  Q.   (By Mr. Snoke)  Can you tell us what the -- I think I

18  skipped this on some of the interim ones, but the date of

19  filing on this, the earliest date of filing?

20  A.   This shows to be received December 12th of 2002.

21  Q.   And going to the Schedule A -- or may be in a different

22  place on this 1040 -- no, it's still in Schedule A, line 27.

23  Does this have the same language as the previous two that you

24  talked about -- previous three, I guess?

25  A.   Right.  It talks about a claim of right deduction, and it

1   shows $107,514.

2   Q.   All right.  Look at 4-A, then, please, for me.  Tell me

3   what that is.

4   A.   This is the certified transcript for Michael Polay for tax

5   year 2001.

6   Q.   All right.  Again, is that document an accurate copy of

7   what the records show for the IRS?

8   A.   Yes.

9           MR. SNOKE:  We move into evidence 4-A at this time.

10          MR. STILLEY:  No objection.

11          THE COURT:  Be admitted.

12  Q.   (By Mr. Snoke)  Let's go to 5 then.  Again, the same

13  questions with respect to 5.  It's still Mr. Polay?

14  A.   Yes.

15  Q.   What tax year is this for?

16  A.   This is Form 1040 for 1997 for Michael Polay.

17  Q.   All right.  Again, a true and accurate copy of the

18  records?

19  A.   Yes, that's true.

20  Q.   Including -- I think the last page there is actually an

21  envelope.  Do they usually keep the envelopes that the taxpayer

22  mails in its tax returns?

23  A.   Only if it's received after April 15.

24  Q.   All right.  Well -- okay.  Then this one was, I guess?

25  A.   This was a late-filed return, it appears, because it was

1  received late -- or after 1998.

2          MR. SNOKE:  We'll move into evidence Exhibit 5 at

3  this time.

4          MR. STILLEY:  No objection.

5          THE COURT:  Be admitted.

6  Q.  (By Mr. Snoke)  Tell us with respect to Exhibit 5 when it

7  was received by the IRS.

8  A.  It appears to have a earliest date of February 13, 2003.

9  Q.  Going to the third page there, the first page of the

10 Schedule A, again the same language there on line 27 typed in

11 by the taxpayer or his representative.

12 A.  It shows the claim of right deduction of $63,722.

13 Q.  That pretty much -- actually, go back to the first page of

14 that tax return on Exhibit 5.  Is that the total amount of

15 income there for that year?

16 A.  Yes, that's the total amount of income.

17 Q.  So he's listed it as wages and salaries there on line 7,

18 and it comes down there to line 32; his adjusted gross income

19 is still 63,722; is that correct?

20 A.  Correct.

21 Q.  Over there on Schedule A, he's taking it all back off by

22 claiming it as a deduction; is that correct?

23 A.  Right.  By removing it, then he shows zero for taxable

24 income.

25          MR. SNOKE:  We move into evidence 5-A.

```
 1            MR. STILLEY:  No objection.
 2            THE COURT:  Be admitted.
 3   Q.   (By Mr. Snoke)  All right.  Now, 5-A is the transcript; is
 4   that correct?
 5   A.   Yes.
 6   Q.   For the same year, 1997, for Mr. Polay?
 7   A.   This is the transcript for '97.
 8   Q.   It goes with Exhibit 5, which was the 1040 tax return,
 9   correct, same year, 1997?
10   A.   Yes.
11   Q.   Let's go to Exhibit 6.  Is that a 1040X again from your
12   records at the IRS?
13   A.   Yes, it is.  It's a 1040X for tax year 1999 for Bradley
14   and Bonnie White.
15   Q.   For the tax year 1999; is that correct?
16   A.   Yes.
17   Q.   All right.
18            MR. SNOKE:  Again, we would move into evidence
19   Exhibit 6.
20            MR. STILLEY:  No objection.
21            THE COURT:  Be admitted.
22   Q.   (By Mr. Snoke)  Again, as you've done before, would you
23   tell us, first of all, is there anybody's name down there on
24   preparer's line?
25   A.   No, there's not.
```

1  Q.   Mr. Blackstock's name doesn't appear anywhere on that

2  document?

3  A.   No.

4  Q.   At least on the front page?

5  A.   No.

6  Q.   If you want to look back through there, I think -- I don't

7  think you'll find his name anywhere.  But there are some things

8  attached to that, of course, to that tax return; is that

9  correct?

10  A.   There are, but I don't see Mr. Blackstock's signature.

11  Q.   All right.  What was the earliest filing date on that

12  document when it was filed?

13  A.   It shows a received date of December 2 of 2002.

14  Q.   And the -- going to the first page of Schedule A, what is

15  the amount of deduction?

16  A.   The claim of right deduction, is for $77,201.

17  Q.   All right.  There's some other deductions on this

18  particular tax return; is that correct?

19  A.   Yes.  Some state and local income taxes, property taxes

20  and mortgage interest.

21  Q.   Let's go to Exhibit 6-A.  Is that the matching transcript

22  for this taxpayer for that tax year, which was 1999?

23  A.   Yes, it is.

24          MR. SNOKE:  Move into evidence 6-A.

25          MR. STILLEY:  No objection.

```
 1            THE COURT:  Be admitted.
 2   Q.   (By Mr. Snoke)  Go to 7 next, Exhibit 7.  Again, we have a
 3   1040X form for the year 2000, do we?
 4   A.   Yes, there is.
 5   Q.   Again for Bradley and Bonnie White?
 6   A.   That's correct.
 7   Q.   And again, it's your records -- taken from your records
 8   there at the IRS?
 9   A.   Yes, it is.
10            MR. SNOKE:  Move into evidence 7.
11            MR. STILLEY:  No objection.
12            THE COURT:  Be admitted.
13   Q.   (By Mr. Snoke)  Filing date on -- earliest filing date on
14   Exhibit 7, was it 12/7/02?
15   A.   That's correct.
16   Q.   Again, any indication Mr. Blackstock was involved in this,
17   preparing this tax return?
18   A.   No, I didn't see a signature.
19   Q.   He's not down there as a preparer?
20   A.   No.
21   Q.   Going to the Schedule A, what is the amount -- the claim
22   of right compensation for personal labor they're deducting on
23   the first page of Schedule A?
24   A.   The deduction is for $80,678.
25   Q.   7-A.  Again, transcript that goes with this?
```

1  A.    Yes, that's correct.

2  Q.    For that year --

3  A.    For 2000.

4  Q.    -- 2000 year?

5        MR. SNOKE:  Move into evidence 7-A.

6        MR. STILLEY:  No objection.

7        THE COURT:  Be admitted.

8  Q.    (By Mr. Snoke)  I skipped one here.  We have to go back

9  for one year.  6-D.  If you'll look at 6-D briefly, which is

10 for the 1999 tax year.

11 A.    Okay.

12 Q.    Can you tell me what that is, sir?

13 A.    This is a copy of a letter that was mailed from the

14 Internal Revenue Service to Bradley and Bonnie White concerning

15 tax years 1999 and 2000.

16 Q.    That's an accurate copy of the IRS copy of that letter?

17 A.    Yes, it is.

18        MR. SNOKE:  Move into evidence 6-D at this time.

19        MR. STILLEY:  No objection.

20        THE COURT:  Be admitted.

21 Q.    (By Mr. Snoke)  Please tell the jury a little bit about

22 this letter that's up there on the screen there.  And I realize

23 it's a little hard to see maybe.  It's standard typing.  But

24 tell us what that letter is, please, sir.

25 A.    This letter is in response to the documents that Bradley

1    and Bonnie White had submitted to the Internal Revenue Service,

2    and it was a letter stating that they have determined the

3    documents that they sent in is a frivolous document, no basis

4    in law, and represents a frivolous position.

5        Then it goes on down further that there could be a $500

6    penalty for each frivolous return or document filed.  And then

7    it gives other instructions that if they sign certain forms,

8    they'll -- the IRS will disregard the previous documents filed

9    and not assess the frivolous return penalties.

10   Q.   If they file a properly signed 2297 and 3363.  What are

11   those forms?

12   A.   Those are forms filed that the person -- that the person

13   who submitted these can say that they revoke what they sent in.

14   Q.   What was the date of this letter sent out by the IRS?

15   A.   This was sent out March 18th of 2003.

16   Q.   Going back to exhibit -- this has to do with the '99 and

17   2000 tax years; does it not?

18   A.   That's correct.

19   Q.   Shows on the upper right-hand side of that.  And Exhibit 6

20   had to do with the '99 tax year and I guess Exhibit 7 had to do

21   with the 2000 tax year we just identified and moved into

22   evidence; is that correct?

23   A.   That's correct.

24   Q.   They're telling them both with respect to both Exhibit 6

25   and Exhibit 7 that they are rejecting those as frivolous?

21

```
 1  A.    That's correct.
 2  Q.    We showed that the filing date on Exhibit 6 was 12/02/02
 3  and the one on 7 was 12/07/02, and this letter is dated in
 4  March of '03; is that correct?
 5  A.    That's correct.
 6  Q.    All right.  Let's go on then back into the 7s again, and
 7  we did 7 and 7-A.  Let's go to Exhibit 7-B.
 8          MR. SNOKE:  Did I move in 6-D in evidence?
 9          THE CLERK:  You did.
10  Q.    (By Mr. Snoke)  All right.  7-B is the next one I have
11  down here.  And that may be a similar document to the one we
12  just discussed.
13  A.    7-B is the same as 6-D, but because it's for the next tax
14  year for 2000, there were two different copies made.
15  Q.    It goes with Exhibit 7.  And we had the other one with
16  Exhibit 6; is that right?
17  A.    Correct.
18  Q.    But the same letter covered both tax years that we pointed
19  out there when we had it on the screen.
20  A.    Right.
21          MR. SNOKE:  Move into evidence 7-B.
22          MR. STILLEY:  No objection.
23          THE COURT:  Be admitted.
24  Q.    (By Mr. Snoke)  Let's look at 7-C.  Tell us what 7-C is.
25  A.    7-C is a print of an electronically filed return for
```

1  Bradley and Bonnie White for tax year 2000.

2  Q.   That's the same year we've been talking about here in

3  Exhibit 7, elsewhere in Exhibit 7?

4  A.   Correct.

5  Q.   And what is this they're -- this is a Form 1040

6  electronically filed; is that right?

7  A.   That is correct.

8  Q.   It's a correct copy from the records of the IRS?

9  A.   Yes.

10          MR. SNOKE:  Move into evidence 7-C.

11          MR. STILLEY:  No objection.

12          THE COURT:  Be admitted.

13 Q.   (By Mr. Snoke)  Now, on 7-C is actually the original --

14 well, tell us what the filing date is on 7-C.

15 A.   7-C was received around -- well, it was received around

16 February 12th of 2001.

17 Q.   And can we look at the transcript and tell when that was

18 -- which is 7-A?

19 A.   Yes.  That's why I had to look at the right-hand side

20 because this was the timely filed tax return for tax year 2000.

21 Q.   So it was on or before April 15th of 2001, then, or

22 something?

23 A.   Right.

24 Q.   So this is the original tax filing for the year 2000, and

25 then Exhibit 7 is the amended one that they did under the --

1  under the claim that compensation for labor was not -- was

2  deductible; is that correct?

3  A.    That's right.

4  Q.    Let's look at Exhibit 8.   What is Exhibit 8?

5  A.    This is a true copy of Form 1040X for Tracy Whyburn for

6  tax year 2001.

7  Q.    Again, true and correct copy from the IRS files?

8  A.    Yes.

9          MR. SNOKE:  Move into evidence 8 at this time.

10         MR. STILLEY:  No objection.

11         THE COURT:  Be admitted.

12  Q.    (By Mr. Snoke)  As we did with the others,

13  Mr. Blackstock's name is not down there as a preparer.   In

14  fact, there's no name as a preparer, right?

15  A.    No, there's no name.

16  Q.    And the received date for this 2001 tax return for

17  Mr. Whyburn?

18  A.    December 4th of 2002.

19  Q.    Turning to the line 27 of Schedule A, what is the

20  compensation for personal labor deduction that is on there?

21  A.    Claim of right deduction, is for $36,378.

22  Q.    All right.   It also says compensation for personal labor,

23  doesn't it?

24  A.    For personal labor, yes.

25  Q.    All right.   Going back to the first page of that document,

1  that doesn't -- the adjusted gross income is what -- was

2  originally what, as listed on the 1040X form?

3  A.   Originally adjusted gross income was shown as $38,941.

4  Q.   So this isn't the total amount, but it does take a lot

5  of --

6  A.   Well, whenever they add in all the other deductions that

7  they had, it would total up to $54,000.

8  Q.   That means that he is claiming a refund, actually?

9  A.   That's correct, yes.

10  Q.   Exhibit 8-A, again, is that the transcript for this tax

11  year for this taxpayer --

12  A.   Yes, it is.

13  Q.   -- Mr. Whyburn?

14       MR. SNOKE:  Move into evidence 8-A.

15       MR. STILLEY:  No objection.

16       THE COURT:  Be admitted.

17  Q.   (By Mr. Snoke)  8-B.  Look at 8-B for a minute.  What is

18  8-B?

19  A.   8-B is another copy of the letter from the Internal

20  Revenue Service to Tracy Whyburn.

21  Q.   Is that the same kind of letter that we talked about

22  before that went to -- the same letter that was identified as

23  going to earlier taxpayers?

24  A.   Yes.

25       MR. SNOKE:  We'd move into evidence 8-B.

1    MR. STILLEY:  No objection.

2    THE COURT:  Be admitted.

3    Q.   (By Mr. Snoke)  All right.  Again, if we can look at 8-B

4    for a minute.  We established that the tax return, the 1040X

5    for the year 2001, was filed in December of '02 by Mr. Whyburn?

6    A.   Correct.

7    Q.   And we established the amount that he was claiming.  And

8    what's the date of this letter?

9    A.   This was dated June 20th of 2003.

10   Q.   And does that -- going to Exhibit 8-A, does any of that

11   filing -- or show up on -- it shows the amended return filed on

12   12/04/02, right?

13   A.   That's correct.

14   Q.   Doesn't show the -- the letter wouldn't show there

15   normally -- the letter going out wouldn't show it?

16   A.   No, it would not.

17   Q.   All right.  And again, that's for the 2001 tax year for

18   Mr. Tracy Whyburn.  Let's move on to Exhibit 8-C.  Tell us what

19   this document is.

20   A.   This is a return print for tax year 2001 for a Form 1040

21   for Tracy Whyburn.

22   Q.   This is originally the 2001 return he filed?

23   A.   Yes.  That was what was originally filed in 2002.

24   Q.   And it was -- we established that he's trying to get back

25   36,378 with the 1040X return.  Does that amount show up

1    somewhere on this tax return, which is the one he originally

2    filed?

3    A.    Yes.  On line 7.

4    Q.    As wages, salaries, tips, etcetera?

5    A.    Yes.

6    Q.    And what is his total adjusted gross income for that year?

7    A.    Total was 38,941.

8    Q.    We discussed those numbers back when we were looking at

9    the 1040X.  Was that electronically filed?

10   A.    Yes.

11   Q.    Timely filed?

12   A.    Yes.

13   Q.    It doesn't have a stamp on it because it was timely filed;

14   is that correct?

15   A.    There wouldn't be a stamp on an electronic return.

16   Q.    We know it was -- for the 2001 year, it must have been

17   filed before April 15, 2002?

18   A.    Electronic returns are generally accepted by the IRS up

19   through October 31st of that year.

20   Q.    So we can't tell exactly when that was filed?

21   A.    From the transcript, it was received around August 5th of

22   2002, because there had been an extension filed.

23   Q.    All right.  About four months before the 1040X was

24   filed --

25   A.    Yes.

1   Q.    -- in December.

2           MR. SNOKE:  We move 8-C into evidence.

3           MR. STILLEY:  No objection.

4           THE COURT:  Be admitted.

5   Q.   (By Mr. Snoke)  Again 9, another 1040X form for

6   Mr. Whyburn for the 2000 tax year?

7   A.   Yes, it is.

8   Q.   Same questions.  It's the official record?

9   A.   Yes.

10          MR. SNOKE:  Move into evidence 9.

11          MR. STILLEY:  No objection.

12          THE COURT:  Be admitted.

13  Q.   (By Mr. Snoke)  Again, no preparer's name on this

14  document?

15  A.   No, there's not.

16  Q.   What's the filing date on this?

17  A.   It was received January 6th of 2003.

18  Q.   And the amount of claim of right compensation for personal

19  labor on line 27 that he wants deducted?

20  A.   That was for a deduction of $33,047.

21  Q.   Exhibit 9-A.  It's a transcript for this tax year for this

22  taxpayer?

23  A.   Yes, it is.

24          MR. SNOKE:  Move into evidence 9-A.

25          MR. STILLEY:  No objection.

```
 1          THE COURT:  Be admitted.
 2  Q.    (By Mr. Snoke)  Let's go to 9-B.  Another one of these
 3  letters to Mr. Whyburn regarding this tax year, the 2000 tax
 4  year?
 5  A.    Yes, it is.
 6  Q.    Same -- about the same language as we published here
 7  before?
 8  A.    That's correct, yes.
 9          MR. SNOKE:  Move into evidence 9-B.
10          MR. STILLEY:  No objection.
11          THE COURT:  Be admitted.
12  Q.    (By Mr. Snoke)  What's the date that that letter went out
13  to Mr. Whyburn regarding his January 1040X form that we just
14  talked about in Exhibit 9?
15  A.    November 21st of 2003.
16  Q.    It took them almost a whole year before they actually
17  rejected this one; is that correct?
18  A.    It depends upon how busy they are.
19  Q.    I see.  Now, look at 9-C.  What is 9-C?
20  A.    This is the original 1040 return for Tracy Whyburn for
21  2000.
22  Q.    Electronically filed, as the other one?
23  A.    Yes.
24  Q.    Timely filed?
25  A.    Yes, it was.
```

```
 1              MR. SNOKE:  Move into evidence 9-C.
 2              MR. STILLEY:  No objection.
 3              THE COURT:  Be admitted.
 4   Q.  (By Mr. Snoke)  Let's go to 10.  What is 10?
 5   A.   Ten is a 1040X for 2001 tax year for Timothy and Linda
 6   Ophoff.
 7   Q.   That's O-P-H-O-F-F?
 8   A.   That's correct.
 9   Q.   Again, from your records there?
10   A.   Yes, it is.
11   Q.   Including all the attachments that were sent with this
12   filing, correct?
13   A.   Correct.
14              MR. SNOKE:  Move into evidence 10.
15              MR. STILLEY:  No objection.
16              THE COURT:  Be admitted.
17   Q.  (By Mr. Snoke)  Filing date on 10?
18   A.   Shows received February 2nd of '03.
19   Q.   Page 3, the amount of income that's being deducted as
20   claim of right deduction is how much, line 27 of Schedule A?
21   A.   $90,031.
22   Q.   No tax preparer's name on that one either?
23   A.   No, there's not.
24   Q.   Exhibit 10-A, is that the transcript for this tax year for
25   these taxpayers?
```