1   A.    Yes, it is.

2           MR. SNOKE:  Move in evidence 10-A.

3           MR. STILLEY:  No objection.

4           THE COURT:  Be admitted.

5   Q.    (By Mr. Snoke)  Let's go to 10-C.  And tell us what that

6   is.

7   A.    This is another one of those letters concerning frivolous

8   documents for Timothy and Linda Ophoff for 2001 tax year.

9   Q.    This one -- what's the date on this one?  Did this one go

10  out from the Internal Revenue Service?

11  A.    May 23rd of 2003.

12          MR. SNOKE:  Move into evidence at this time Exhibit

13  10-C.

14          MR. STILLEY:  No objection.

15          THE COURT:  Be admitted.

16  Q.    (By Mr. Snoke)  That's for the 2001 tax year; is that

17  right?

18  A.    That's correct.

19  Q.    This one has -- some of the others may have also, but this

20  one has another received date stamp down near the bottom of it;

21  is that correct?

22  A.    Yes.  There was a received date stamp that it was received

23  in Ogden in June 26th of '03.

24  Q.    It was received back -- it went out May 23rd, comes back

25  on June 26th of 2003; is that correct?

1  A.    Yes, that's correct.

2  Q.    Do you know -- well, let's look at -- incidentally, on

3  these dates that are up there, can you explain to the Court and

4  the jury the date of May 23 on the top of this letter, 10-C,

5  May 23, 2003, what does that mean -- when is it going to be

6  mailed out by the IRS?

7  A.    It's mailed out by at least May 23, generally a day or two

8  in advance, hopefully so that the person would receive it on

9  the date of the letter.

10 Q.    This would have gone out from -- this one would have gone

11 out from Ogden, Utah; is that right?

12 A.    Yes.

13 Q.    Which is the return address on it.

14       Let's look at Exhibit 10-D, then, for a moment.  Again,

15 these have similar received Ogden, Utah stamps on them, on

16 these documents.  Can you tell us what they are.  There's also

17 a 1040X, another copy of that.

18 A.    Yes, this showed received in Ogden on June 26th of 2003.

19 Q.    Is that a document that's from the records of the IRS

20 there in -- that you are certifying here today?

21 A.    Yes.

22 Q.    So that was received by Ogden and all the documents

23 attached -- I think you'll find they all have the same June 26,

24 2003 received stamp in Ogden; is that right?

25 A.    Yes.  They apparently stamped every page.

```
 1   this 1040X which is part of this Exhibit 11-C?
 2   A.    They're requesting an appeal.
 3   Q.    I'm sorry?
 4   A.    They're requesting an appeal.
 5   Q.    Yeah, okay.  So it's basically a request for an appeal?
 6   A.    Yes.
 7   Q.    The 1040X they've gotten there is similar to the one that
 8   they previously filed --
 9   A.    Yes.
10   Q.    -- for that tax year?
11   A.    That's correct.
12   Q.    I don't know if I asked you the amount on 11, but I think
13   I did.  All right.
14   A.    Yes.
15   Q.    Yeah, I did.
16         All right.  Now, again, on 11-C -- 11-B and C for that
17   matter, but mostly on 11-C there, if you'll look at those
18   documents, again, there's no preparer's signature on the 1040X
19   that's attached to that appeal; is that correct?
20   A.    No, there's not.
21   Q.    And the same amount claimed as compensation for personal
22   labor as a deduction, $83,136 there?
23   A.    That's correct, yes.
24   Q.    Again, Mr. Blackstock -- on those documents, you don't see
25   Mr. Blackstock's name on there anywhere?
```

```
 1   A.    No, there's not.

 2   Q.    Let's go on to --

 3             MR. SNOKE:  Let's see, is 11-C in evidence?  Move in

 4   evidence 11-C.

 5             THE CLERK:  11-C is in evidence.  11-D is not.

 6   Q.    (By Mr. Snoke)  11-D then.  What is that, sir?

 7   A.    11-D is a true copy of the 1999 1040 for Timothy and Linda

 8   Ophoff.

 9   Q.    That's their original filing in this case for -- in the

10   '99 tax year, right?

11   A.    Yes.

12             MR. SNOKE:  Move into evidence 11-D then.

13             MR. STILLEY:  No objection.

14             THE COURT:  Be admitted.

15   Q.    Let's go to 12.  What is 12?

16   A.    Twelve is a Form 1040 for Timothy and Linda Ophoff for

17   2000 tax year.

18   Q.    And again, it's a true and correct copy of the records you

19   have for the Ophoffs down in Austin --

20   A.    Yes.

21   Q.    -- the IRS records?

22   A.    Yes.

23             MR. SNOKE:  Move into evidence 12.

24             MR. STILLEY:  No objection.

25             THE COURT:  Be admitted.
```

```
 1   labor.
 2   Q.   Speaking of that, what is -- back on page 1 -- it doesn't
 3   show -- never mind.  On page 1 -- actually, it's page 2, I
 4   guess, on a 1040.  Is there any preparer's name down there?
 5   A.   No, there is not.
 6   Q.   What does it show the occupation of Mr. Ophoff is?
 7   A.   He's a painter, and Linda is a teacher.
 8   Q.   Let's look at --
 9           MR. SNOKE:  Is 12-A in evidence?
10           THE CLERK:  It is.
11   Q.   (By Mr. Snoke)  Let's look at 13.  What is 13?
12   A.   This is a 1040X for 1999 for Latricia Braddy.
13   Q.   Same record from your files?
14   A.   Yes.
15           MR. SNOKE:  Move into evidence 13.
16           MR. STILLEY:  No objection.
17           THE COURT:  Be admitted.
18   Q.   (By Mr. Snoke)  Is 13-A a transcript for this transaction
19   -- I mean for this tax year for this person?
20   A.   Yes, it is.
21   Q.   That's the '99 tax year?
22   A.   That's correct.
23           MR. SNOKE:  Move into evidence 13-A.
24           MR. STILLEY:  No objection.
25           THE COURT:  Be admitted.
```

1       30-A is the transcript for the 2001 tax year for Craig and

2  Jennifer Van Patten; 31 is the -- is a 1040 tax return for

3  Jennifer and Craig Van Patten filed for the 2002 tax year in

4  June of 2003; 31-A is the 2002 transcript of the account for

5  Craig and Jennifer Van Patten for the 2002 tax year.

6       32 is the -- is a 1040 tax return for Craig and Jennifer

7  Van Patten filed in 2000 -- for the 2000 tax year in June of

8  2003; 32-A, a transcript of the 2000 tax year for Craig and

9  Jennifer Van Patten; 32-B is a 2000 1040 tax return for Craig

10 and Jennifer Van Patten for the 2000 tax year -- just a second

11 here.  That one, I think, was filed with an appeal.  Anyway,

12 it's 32-B.

13       And I think --

14          MR. STILLEY:  Your Honor, we would have no objection

15 to all those that he has stated for those to be admitted.  I

16 would like to approach.  I think maybe we could expedite some

17 other things even a little bit more.

18          THE COURT:  All right.

19      (The following proceedings were had at the bench, out of

20 the hearing of the jury.)

21          THE COURT:  Is that the end of your offer?

22          MR. SNOKE:  I'm getting there.

23          MR. STILLEY:  I want to make my record up here.

24          THE COURT:  Was that the end of your offer 32-B, or

25 are there more?

 1          MR. SNOKE:  I've got more, but this is the end of the
 2   first batch.
 3          MR. STILLEY:  Your Honor, the reason I brought that
 4   up at this point in time is because I think that the other
 5   exhibits -- I know where he's going next, and I think that that
 6   relates to uncharged conduct, and I want to make an objection
 7   outside the jury.
 8          THE COURT:  Okay.
 9          MR. SNOKE:  I guess he's objecting in advance to some
10   documents that Collins is going to be testifying to, the next
11   witness that we're taking, in the search of the house, subject
12   to a search warrant for which there's been no motion to
13   suppress filed.
14          MR. STILLEY:  Actually, no, Your Honor, it's Exhibit
15   No. 58, which is a Mr. Dean document.  So if you'll turn to 58,
16   you'll see what I'm talking about.
17          MR. SNOKE:  58.
18          MR. STILLEY:  It's Bob Dean.
19          MS. RADFORD:  You mean the one that shows knowledge
20   that he knew what he was doing?
21          MR. STILLEY:  Well, it's uncharged conduct.  They
22   could have charged him with it, and didn't.  And I just
23   respectfully submit that this doesn't show anything about
24   knowledge.
25          THE COURT:  There's no offer yet on this.  He's got

1  an offer that goes through 32-B.

2         MR. STILLEY:  We stipulate to that admission.  The

3  only thing that we want to look at is No. 58 is a 2004 1040X

4  tax return for Richard Blackstock.  There's no charge on that.

5         THE COURT:  Okay.  When he offers that, we'll discuss

6  it.

7         MR. SNOKE:  I can offer those, what we've done to

8  now.  And if the Court wants to take this up after, we can do

9  it.

10        THE COURT:  Are there any other that are not objected

11 to?

12        MR. SNOKE:  I have Mr. Dean down to identify and talk

13 about Exhibit 41, 42, 43, then we get to the series of 56

14 through 63, which is -- I think that's the ones he's objecting

15 to, or are you just objecting to 58?  You just said 58 a minute

16 ago.

17        MR. STILLEY:  I'm objecting to 58 through 63.  And on

18 these others -- Your Honor, I need to look at Exhibit 42 and 43

19 because I don't think that I'll object to those, but --

20        THE COURT:  Okay.

21        MR. STILLEY:  I do object to --

22        THE COURT:  We'll take care of it.

23        MR. STILLEY:  Your Honor, Exhibits 56 through 63 have

24 to do with --

25        THE COURT:  I don't want to hear it now.

```
 1        (The following proceedings were had in the presence and
 2   hearing of the jury.)
 3            THE COURT:  Now, it's my understanding that these
 4   exhibits are to be admitted without objection, 14-A, 15, 15-A,
 5   16, 16-A, 17, 17-A, 18, 18-A, 18-D, 19, 19-A, 20, 20-B, 20-D,
 6   21, 21-A, 21-G, 22, 22-A, 23, 23-A, 24, 24-A, 25, 25-A, 25-C,
 7   26, 26-A, 26-E, 27, 27-A, 27-C, 27-D, 27-E, 28, 28-A, 28-B,
 8   28-E, 29, 29-A, 29-C, 30, 30-A, 31, 31-A, 32, 32-A, 32-B.
 9        20-A, is that also one of them?
10            MR. SNOKE:  20-A should be, yes, Your Honor.
11            THE COURT:  Very well.
12            MR. SNOKE:  I failed to move in one other, which is
13   19-C, a 2001 Form 1040X for Franklin and Denise Warlick.
14            THE COURT:  19-C.  Anything else?
15            MR. SNOKE:  19-C.
16            MR. STILLEY:  Beg your pardon?
17            MR. SNOKE:  19-C.
18            MR. STILLEY:  No objection to that.
19            THE COURT:  Any objections to the ones that I've read
20   off there?
21            MR. STILLEY:  No, Your Honor.
22            THE COURT:  Very well.  Those will all be admitted.
23            MR. SNOKE:  And 19-C; is that correct?
24            THE COURT:  That's correct.
25            MR. SNOKE:  All right.
```

1  Q.    (By Mr. Snoke)    Now, if you will look at exhibits --

2  start with Exhibit 41, please, sir.  Can you tell us if you

3  recognize Exhibit 41?

4  A.    41 is a 1040X for 2000 tax year for Richard Blackstock.

5  Q.    I'm sorry.  Strike that.  I need you to look at --

6          MR. SNOKE:  May I have a minute, Your Honor?

7          THE COURT:  You may.

8  Q.    (By Mr. Snoke)  Mr. Dean, you talked about a substitute

9  for return earlier.

10  A.    Yes.

11  Q.    Can you tell the Court and the jury what that is.

12  A.    A substitute for a return is actually the start of a

13  process where the Internal Revenue Service has received

14  third-party information or other information as far as someone

15  having income, but not having filed a tax return.  The posting

16  is made to the -- what we call the tax module for that specific

17  year so that -- and at that time also a letter is mailed to the

18  taxpayer to say this is the information we have showing that

19  you have this income and this is the proposed tax.

20      The posting on their substitute for return does a couple

21  of things.  It creates that tax module, and it also puts other

22  areas of the IRS on notice so in case a 1040X or a 1040 comes

23  in for that taxpayer for that year, it would go what we call

24  unpostful; it can't post to the account because of that

25  substitute for return.

1    That document that's sent in by the taxpayer will go to --
2  whether it's in examination or collection, for someone to look
3  and see if the information on that substitute for return is
4  valid.  And if it is, then that information will be posted.
5  Otherwise, if the IRS doesn't receive any information back from
6  the taxpayer, there would be what we call a default adjustment
7  made to the account to assess the amount of tax due that has
8  been calculated.
9    So then it would go into a collection status from that
10  point.
11    MR. SNOKE:  I don't believe I have any other
12  questions of this witness at this time.
13    THE COURT:  Members of the jury, we'll break for the
14  day.  Please remember the Court's admonitions.  You're not to
15  discuss this case with anyone or allow anyone to discuss it
16  with you.  That means basically that we don't want you to have
17  discussions about the case in the jury room with each other
18  yet.  And really the reason for that -- I'm not sure that
19  there's a great reason for it, but the main reason is we don't
20  want people to start making up their minds until the case has
21  been fully presented.  And we'd also -- you know, you have to
22  deliberate as a group, so we can't have smaller groups breaking
23  off and having discussions.  Everything has to be from your
24  collective wisdom and your collective memories.
25    I also don't want you to discuss the case with anyone at

1    your home.  It's not so much what you would say, it's -- what I

2    try to avoid is having someone else's opinions grafted onto

3    yours.  If you start a discussion, then someone is going to

4    tell you what their opinion is or make some observations

5    without having been here and without seeing the witnesses and

6    without knowing anything really about the case.  So I ask you

7    just not to talk with anyone about the case, allow anyone to

8    talk to you about the case.

9        You must not do any research or investigation on your

10   own.  And as I indicated, you have to keep an open mind until

11   we get to the end of the case and you deliberate together.

12       I'll see you at 9:30 in the morning.  Thank you.

13       (The following proceedings were had outside the presence

14   of the jury.)

15           THE COURT:  Be seated.  Now let's get to the

16   problems.

17           MR. SNOKE:  Your Honor, the other exhibits that

18   counsel was talking about, he mentioned 58, it's actually -- I

19   believe would begin with 56 and go through -- well, 56 through

20   58 and then 61 through 63 cover certified accounts similar to

21   what we've had in the A exhibits of the previous exhibits

22   here.  They're transcripts showing -- 56 is a transcript

23   showing that Mr. Blackstock did not file any return for the

24   time period from '89 through '98, that's a ten-year period,

25   which was mentioned in our 404(b) -- one of our 404(b) things.

1    57 is a transcript of account for the '99 year showing

2  that he did, in fact, show -- file a 1040X substitute -- a

3  substitute return was filed for him.  Then he filed a 1040X

4  return for that year, which is part of our evidence in the case

5  during the time period because he filed that in December of

6  '02.  He filed both a 1040X for the two 2000 and 2000 (sic) tax

7  years.

8    Exhibit 58 is a 1040X tax return filed by Mr. Blackstock

9  under this same theory, claim of right, for the 2000 tax year

10 for himself, which he filed in December of 2002, the time

11 period of our indictment.

12    Exhibit 59 is a transcript of account for Mr. Blackstock

13 for the 2000 tax year.  And then 60, beginning with 60, it's

14 the 2001 account transcript for Mr. Blackstock showing he

15 didn't file, but they filed a substitute for return for him.

16    61, a transcript of account for the 2002 tax year for

17 Mr. Blackstock showing no filing for that year.  And 62 and 63

18 are for the 2003 and 2004 tax years.

19    We believe that at least -- the fact that Mr. Blackstock

20 is a nonfiler -- in fact, we would argue that he's actually --

21 there's evidence that he's more than that, actually a tax

22 protestor, but he's certainly a nonfiler in the parlance of the

23 Internal Revenue Service, and we've cited cases there, I think,

24 that show that that nonfiling status is relevant on the

25 willfulness issue.

1    And I'd cite the Court to the -- in addition to the case
2    that we cited in our notice of res gestae and 404(b) -- some of
3    this is res gestae because it happened during the time period
4    of the indictment and he filed the exact same kind of claim of
5    right tax returns for the '99 and 2000 tax years in December of
6    2002 that he was filing for everybody else that the Court has
7    just seen evidence on in the previous exhibits -- a case of
8    United States vs. Fingado, F-I-N-G-A-D-O, at 934 F.2d 1163,
9    Tenth Circuit, 1991, I would suggest holds the proposition that
10   evidence of defendant's failure to file in prior years was
11   admissible on the issue of willfulness and good faith, both of
12   which have been addressed in the opening remarks of the
13   defendant.  Of course, willfulness is an issue, one of the
14   elements of the crime that we have charged him with in these 32
15   counts.

16       We would submit that Exhibit 57, 58 and 59 are all res
17   gestae, they all occurred -- cover the period for the tax years
18   in which he actually filed one of these 1040X forms for
19   himself, and he filed them during the time period in the
20   indictment.

21       The other exhibits, that would be 60 through 63 and
22   Exhibit 56, covering the ten years before this time period, we
23   would submit that those would be admissible under 404(b) to
24   show his willfulness, his lack of -- his intent and knowledge
25   and common scheme and plan as set forth in the 32 counts of the

```
 1   indictment -- the superseding indictment.
 2           THE COURT:  Mr. Stilley.
 3           MR. STILLEY:  Your Honor, actually, as to the --
 4   Your Honor, actually, the government has just about persuaded
 5   me that they would have a basis for entering these, the returns
 6   that were filed, but for the limited purpose of showing the
 7   state of mind of the defendant.  I think if we had a limiting
 8   instruction on that, that those could be admitted.
 9       And with respect to the failure to file, the issue that I
10   see there is uncharged conduct that could be excessively
11   prejudicial to the jury.
12       Now, I think that we've already taken this -- the PRA
13   issue already seems to be proper before the -- for questioning
14   before the jury based upon the Court's rulings, but if this --
15   if these prior failures to file are raised, it would seem that
16   that would just make the PRA even more relevant to the
17   discussion that it already is.
18       So with that said, I'll let the Court decide as to whether
19   these need to be allowed in or not.
20           THE COURT:  The exhibits, once the foundation is
21   laid, I don't know whether you're going to want to agree to
22   that or not, but the exhibits will be admitted as either res
23   gestae or 404(b) and with an appropriate limiting instruction.
24       I want to hear some more about this PRA argument.  I keep
25   looking at these cases, and I'm still not sure exactly what
```

```
 1   your argument is.
 2          MR. STILLEY:  Okay, Judge, let me make a run at this
 3   then.  I think one of the central issues that we've got here is
 4   that we've got a new PRA, whereas the government keeps on
 5   addressing the old PRA.
 6          THE COURT:  As does the IRS.
 7          MR. STILLEY:  Yes, the IRS does that.  And I would
 8   respectfully that that --
 9          THE COURT:  There's that 11-year period that you've
10   talked about, though, you haven't produced one case that
11   indicates that there's a different interpretation out there.
12          MR. STILLEY:  Well, actually, Your Honor, this is --
13   it probably would be helpful if I would supply another brief on
14   this.  Would the Court like me to supply another brief so I can
15   just lay these things out?
16          THE COURT:  That will be fine.
17          MR. STILLEY:  Very well.  And I know it seems like
18   that there would be other cases like that.  Really -- and maybe
19   this is not what the Court is looking for, but I had a case in
20   Peoria, Illinois just about a month or so ago, where that the
21   PRA issue was raised and the government just dismissed the case
22   with prejudice.
23        And I know that that is not, you know, Tenth Circuit case
24   law or anything like that, but it does indicate pretty strongly
25   in my mind -- and let me say this:  The charges were willful
```

1   failure to file and tax evasion.

2       And also, the -- basically all we had presented as far as

3   a defense was PRA.  And that indicates to me that the

4   government thinks it's a strong defense, otherwise, why would

5   they dismiss?  And they dismissed on a Friday before the Monday

6   when the case was supposed to go to trial.

7       What I don't see is any case since 1995 that says that you

8   can't use this.  And before we get too far afield here, let me

9   bring out some issues that help us build a case as to whether

10  or not this is a valid defense.

11      The IRS has, as I think everybody will agree, put the same

12  OMB number on the 1040 for about 25, 26 years.  Now, it was

13  either 2005 or 2006 -- and I can provide you with the correct

14  information in a brief -- but the IRS then decided under

15  pressure, there was pressure -- Your Honor, I filed a brief at

16  the Tenth Circuit that was dismissed for other reasons -- I

17  didn't file it, but I drafted it and there was another attorney

18  that filed it, and these issues are looming large, and the

19  government knows that these issues are looming large.

20      And in response to that, or at least in the face of that,

21  the IRS decided that they would put the same OMB number on just

22  a whole slew of tax forms, 1040X, the 1040, well, just about

23  everything that's even -- even the 2555 foreign-earned income,

24  they just slap the number on everything, which seems to me to

25  be almost a concession that the IRS does not have their ducks

1  in a row.

2      If they're really going to contend that they can use one

3  number to collect all this information, make changes every

4  year, have no expiration date, not put the instruction on the

5  form which is required by the law, and commit a whole host of

6  other violations of the PRA, but somehow they still comply with

7  the PRA, I'd like to hear how that they can say that. It does

8  not make any sense. The IRS has taken upon itself to do things

9  that are inconsistent with obedience to the law inconsistent

10 with compliance.

11     If they had -- in response to arguments -- that there was

12 a problem with the form, if they had backed up and made sure

13 that all the information requested was supported by the

14 statutes and by the Constitution, and put a form with an

15 expiration number on it, then you would say, well, we're moving

16 the right direction, the government is trying to obey the

17 requirements that are out there. What you see is the

18 opposite. You see them doing things that just don't make any

19 sense at all.

20     Respectfully, I would submit that despite the fact that we

21 don't have case law or -- now, when I say we don't have case

22 law, I'm saying that there is a paucity of case law on the

23 subject; however, I think that we're soon going to have the

24 case law and the factors that I've been talking to you about

25 are going to play very heavily in this.

1          THE COURT:  Let me ask you about this United States

2    vs. Sasser, if you're familiar with it; if not, let me have you

3    look at it over this evening.  974 F.2d 1544.

4          MR. STILLEY:  What year was that?

5          THE COURT:  It's a 1992 case.  And the question I

6    want to ask you after you've had a chance to look at it --

7          MR. STILLEY:  That's out of the Tenth Circuit?

8          THE COURT:  Yes.

9          -- is whether they -- and they have a failure to

10   file versus filing falsely distinction.  And whether or not

11   that -- whether there's any reason that this distinction would

12   not also apply to the 1995 version of the PRA.

13         MR. STILLEY:  Absolutely, Your Honor.  I can answer

14   that easily.  There's a Law Review article about this, about

15   the new and more powerful PRA of 1995.  And what really, really

16   makes the change there -- and you can see it from this Internal

17   Revenue bulletin.  When you compare the Internal Revenue

18   bulletin with the 3512 of the 1995 PRA, you'll see that the

19   Internal Revenue bulletin says -- and I'm looking down at about

20   the middle of the second paragraph.  It says, "The public

21   protection provision of the PRA provides that no person shall

22   be subject to any penalty for failing to maintain or provide

23   information to any agency if the information collection request

24   involved does not display a current control number assigned by

25   the Office of Management and Budget," OMB.

1    Now, I can agree with that as to the 1980 Act.  And that's

2  what they're talking about is the 1980 Act.  But when you look

3  at the 1995 Act, listen to this, under subsection (a), it says,

4  "Notwithstanding any other provision of law, no person shall be

5  subject to any penalty for failing to comply with a collection

6  of information that is subject to this chapter if..." -- and

7  then they go on to say what the "if" involves.

8    But the operative words there are "a failure to comply."

9  And what you have here is an allegation of a failure to

10  comply.  It's not a failure to fill out and submit the form;

11  they're saying that the attempted compliance was inadequate or

12  improper.

13    Now, before we go too far here, let's stop and think about

14  the tools that the government has in their arsenal.  They can

15  file charges for tax evasion, filing a false return.

16    In this case, they have chosen 7206 -- 7206(2).  And my

17  reading of that statute is that the requirements there would

18  fall under this provision that says you can't have a penalty

19  for a failure to comply.

20         THE COURT:  Okay.  Anything else?

21         MR. STILLEY:  I think that's all I've got.  And I'll

22  try to get you a brief on -- through the electronic filing

23  system as quickly as I reasonably can.

24         THE COURT:  Very well.  Anything else, Mr. Snoke?

25         MR. SNOKE:  Your Honor, I just wanted to inquire.

1  This last argument, is it based on these exhibits as to

2  Mr. Blackstock's failure to file evidence that we were talking

3  about here, or is he again talking about the motion to dismiss

4  where we're not talking about Mr. Blackstock's failure to file,

5  but the taxpayers' actual act of filing that we've just gone

6  through all these exhibits on?  I didn't understand exactly

7  what the Court was --

8          THE COURT:  I assume that it went back to the motion

9  to dismiss.

10         MR. SNOKE:  Again, then our argument hasn't really

11 changed that -- on the motion to dismiss issue, Mr. Blackstock

12 is not the aggrieved party to be complaining about violation of

13 the Paperwork Reduction Act, if there was one.  Of course, the

14 very case that he cited to the Court, <u>Dawes</u>, he indicates that

15 they didn't believe that Congress intended the IRS laws to be

16 circumvented by the fact that the 1040 form may not have an OMB

17 number on it.

18     But anyway, as I pointed out there to the Court before,

19 what we have here is not a case in a 7206(1) where

20 Mr. Blackstock is charged with failure to file, which I think

21 that the Court will find most of these cases are that have been

22 cited by defendant, nor is it a case where we have charged

23 Mr. Ophoff for failure to file under 7206(1).  It is a case

24 under 7206(2), and we don't have a situation where we're

25 charging somebody with failure to file.

1    These tax returns got filed.  They got filed by these

2  witnesses that the Court's about to hear.  They got filed with

3  the assistance of Mr. Blackstock, who filled them out in large

4  part, if not wholly for the taxpayers.

5              THE COURT:  That's why I asked counsel the

6  question --

7              MR. SNOKE:  It's a totally different issue -- I'm

8  sorry.

9              THE COURT:  That's why I asked the question of

10  counsel about failure to file versus filing falsely.

11              MR. SNOKE:  Right.  And the government's argument is

12  that it's --

13              THE COURT:  You're not educating me.  Okay.  Thank

14  you.  See you in the morning.

15                      REPORTER'S CERTIFICATE

16  I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

17  TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED

18  MATTER.

19

20                              S/Terri Beeler
21                              Terri Beeler, RMR
                                United States Court Reporter
22

23

24

25